*Frank I. Isbell* and *F. M. Sala*, for defendant in error.

---

## STREET ASSESSMENTS.

[Circuit Court of Lucas County.]

KATE HENDRICKSON ET AL v. CITY OF TOLEDO ET AL.

Decided, November 1, 1901.

*Street—Appropriation of Land for Extension of—Validity of Award Made by Probate Judge without a Jury—City Acts as Trustee— Cost of Land Assessed Back upon the Property—Valid where Petitioners so Agreed—Burden of Proof as to Benefits.*

1. Where in accordance with a petition by abutting owners land is appropriated for the extension of a street, and the petitioners expressly agree that the cost shall be assessed back upon the property, the statute in connection with this agreement makes the assessment valid; and the abutter is bound by the contract, or is estopped from denying the validity of the assessment, or both, notwithstanding a doubt as to the power of a municipality to so assess back the cost or to enter into such an agreement.

2. In proceedings for the appropriation of property for street purposes, instituted in accordance with a petition by abutting owners, the municipality acts as a trustee for the property owners and should exercise good faith in preserving and protecting their rights.

3. Where in such proceedings a jury is waived, and the award is made by the probate judge, and both the municipality and the property owners are satisfied with the award, and there is no showing of collusion or unfairness, the award will not be set aside for irregularity.

4. Where property owners declare in a petition for a street improve-
ment that they believe their property will be benefited thereby,
and subsquently seek to enjoin the collection of the assessment
on the ground that they were not specially benefited, the burden
is upon them to show a failure of benefits, if indeed they are not
estopped from claiming a failure of benefits.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This case is here on appeal. The action was brought to enjoin
the collection of assessments made upon the lands of the plaint-
iffs on account of the expense of extending Colfax street, in the
city of Toledo, the expense assessed being the cost of the lands
acquired by the city for the extension of the street, i. e., the
expense incident to the acquisition of these lands by appropria-
tion proceedings.

Plaintiffs contend that this is an illegal assessment, relying
upon the decision of C., L. & N. R. R. Co. v. Cincinnati, 62 Ohio
St., 465, which overrules Cleveland v. Wick, 18 Ohio St., 303,
and holds that so much of Section 2284, Revised Statutes, as pro-
vides for the assessment of this kind of expenses upon lands
benefited is invalid.

Plaintiffs do not aver in their petition in this case that the
improvement was not petitioned for by them or others in accord-
ance with the requirements of Section 2267, Revised Statutes,
which section requires that as a condition precedent to levying
an assessment upon lands to be benefited, there shall be a petition
signed by two-thirds of the owners of the lands to be charged.
It is averred in the petition, however, that the assessment of
this cost was not made by a jury, as provided by Chap. 3, Tit.
12, Div. 7, Revised Statutes, but that the city instituted an ac-
tion for the appropriation of this property in the probate court,
where a jury was waived, or was not called, and that by agree-
ment or consent the value of the two pieces of land taken was
fixed at $1,500—$600 to one proprietor and $900 to another—
and that thereupon judgment for the payment of this amount
was entered.

It is said that this action was irregular, and rendered the pro-
ceedings invalid, so that even if there were no other objection,
the assessment ought not to stand. The petition also avers that

the lands or lots of the plaintiffs upon the street were not specially benefited by the improvement, and that therefore they could not be assessed.

The answer admits the averments of the petition as to the various steps taken by the common council in establishing this improvement, the opening up of this street, and the appropriation of the property for the improvement. It denies that the plaintiffs were not specially benefited; it denies in effect that there were any irregularities in the proceedings in the probate court; and it avers with respect to the petition for this improvement as follows:

"Further answering, these defendants say that prior to the time of the adoption of the resolution, the plaintiffs herein, or their grantors, filed a petition in writing with the common council of the city of Toledo, praying the said city of Toledo to enact the necessary legislation for the appropriation and condemnation of the property necessary for the extension of said Colfax street as aforesaid, and consented therein that an assessment might be made by the said city of Toledo upon the lands of said petitioners to defray the cost and expense, including all awards arising out of, or resulting from, the condemnation and appropriation of said property; that said parties so petitioning the said city of Toledo knew at the time of the filing of said petition with the common council of said city, that if said improvements were made, all of the property abutting upon said Colfax street when opened and extended, as petitioned for, would be assessed for the appropriation and condemnation of said property, in proportion to the special benefits conferred thereby; that the said city of Toledo enacted said legislation in pursuance of and in reliance upon said petition, and in reliance upon their right to assess the cost and expense occasioned thereby upon all the real estate bounding or abutting upon said Colfax street when so opened and extended as aforesaid; that these plaintiffs knew at the time of the filing of said petition with said common council that said property so bounding and abutting upon said Colfax street would be specially benefited by the making of said improvement over and above the general benefit that would result to the remainder of the said city of Toledo therefrom."

These averments of the answer are denied by the reply; so that it will be observed that the issue as to whether the plaintiffs signed the petition for this improvement is raised by the answer and reply.

The evidence upon the issues as made by the pleadings has been submitted to this court. Plaintiffs contend that it does not appear from this evidence that they or their grantor petitioned for this improvement.

Exhibit 1 introduced in evidence, consists of two sheets, with a paper back, upon which back appear several endorsements. The first sheet is a petition which (omitting a part of the heading, which can not be made out on account of the way it is pinned in) reads as follows:

"To the Hon. The Common Council of the City of Toledo:

"*Gentlemen*—We, the undersigned, owners of the property described opposite our respective names, the same abutting on Colfax street and Colfax street extended, between Shaw avenue and Lawrence avenue as indicated, desiring that Colfax street may be opened and extended from the present terminus of said Colfax street at the west line of Shaw's Monroe street addition to Lawrence avenue, and believing and acknowledging that our respective properties would be specially benefited thereby, respectfully petition your honorable body to cause the same to be so opened and extended, and that you pass the necessary legislation and cause proper appropriation proceedings to be had therefor, and we further request that a special assessment be made to pay the cost and expense thereof, upon the property abutting upon said Colfax street and Colfax street extended, between Shaw avenue and Lawrence avenue, and consent and request that our respective properties may be so assessed.

"Respectfully submitted."

This is signed by twenty petitioners. Appended is a notation that there are twenty-nine land owners upon the street, and that there is a majority of five signing the petition. It is admitted that seven of the plaintiffs—Dale, Wilkinson, Miller, Hough, Van Hellen, Ott and Yearick—signed this petition, and it is also shown that the grantor of Emma C. Caldwell, who owned the property at the time this improvement was made, signed the petition. With respect to the other plaintiffs—Kate Hendrickson, Ada S. Long and Michael Murphy—there is no evidence tending to show that they or their grantors signed the petition; and it is conceded that the evidence shows that they did not.

The second sheet of this exhibit is a resolution in the ordinary form, declaring the intention of the city to open and extend

Colfax street from Shaw avenue to Lawrence avenue, and that appears to have been adopted, according to the notation upon it, March 21, 1898. It is indorsed by a stamp by David McAllese, president of the board of councilmen, and J. Charles Meissner, president of the board of aldermen, and attested by Lem. P. Harris, city clerk. The backs of these two sheets contain various endorsements, to the effect that the resolution mentioned was adopted by the board of aldermen and the common council in 1898. There are also upon it notations indicating, as explained by the city clerk, who was a witness, that this paper had been referred to certain committees of the common council. The first sheet, viz., the petition, contains this endorsement:

"I, William A. Mills, City Solicitor of the City of Toledo, Ohio, hereby certify that I have examined the above and foregoing petition, and that I approve the same.

"WM. A. MILLS, *City Solicitor.*"

Originally that contained the additional words, "the 2d day of September, 1897," but a pen was run through that part of it for some reason not explained.

The city clerk testifies that this paper, consisting of the various sheets, was found in the office of the city clerk by him, in the usual and proper place for petitions and resolutions, and that both of the papers have been duly recorded in the course of proceedings for the opening up of this street, in the respective volumes of records provided for the recording of such papers; that as a rule and custom of the office, and of the council, a petition like unto this, is first presented, and then a resolution is prepared, if upon examination it is found to have been certified thereon by the city solicitor that the petition is in due form and contains the necessary names; that when he found the paper these various sheets were fastened together in the form in which we now have them. There is no evidence submitted tending to show that the usual course to which he now testifies was not pursued in this case. There is no evidence tending to show that this petition was not a part of the papers fastened together as we now find them, at the time the resolution was adopted by council, and at the time the various proceedings were taken for the appropriation of this property and the opening up of this

street.   The presumption of the continuance of things as found alone would require us to hold, in the absence of any evidence to the contrary, that the original form of the paper was as we find it, all these sheets being fastened together and having this back on them.

The petitioners admit that they signed this petition, and that it was signed by them sometime prior to this action by the council; they think prior to the year that the council took action upon it.   There is evidence that they also signed another petition asking for substantially, if not exactly, the same thing; and another petition is presented here, and witnesses are questioned about it.   That petition answers to the description given by the plaintiffs of that which they signed, and which appears to have been signed in the year 1892.

We think there is no evidence to impeach this document, and no evidence authorizing us to find that the petition was not originally a part of the document.   We therefore do find that the petition was a part of the document, and was attached to the resolution, and that it was upon the faith and authority of this petition that the council proceeded to make this improvement.

As to the question whether there was irregularity in the action in the probate court, the confessing of judgment for $1,500, instead of impanneling a jury, and submitting evidence, and requiring a verdict of the jury awarding the amount.   It is not averred that there was any fraud, or collusion, or unfairness in this transaction; it is not averred that the amount for which there was a confession of judgment, or which it was agreed should constitute the amount of the award, was excessive in any degree; or that these plaintiffs were in the slightest degree prejudiced in any way by this action.

It seems to us that the city acted substantially in the capacity of a trustee for the petitioners in acquiring the property necessary for the improvement that they petitioned for.   They had agreed that the expense should be assessed upon their property, and therefore it devolved upon the city to exercise good faith to undertake to preserve and to protect the rights of the petitioners, but in the absence of any averment of any wrong or any

prejudice, we do not think that there was such an irregularity in these proceedings as would invalidate them. For my own part, I am not able to say (supposing it to have been fairly and honestly done) there was any irregularity about it. I do not understand why the city and the owners of the property can not agree upon the amount. It seems to be that the statute (see Sections 1692 and 2232, Revised Statutes, *et seq.*) authorize the city to acquire property for such purposes by purchase or agreement as well as by condemnation proceedings, and that if they can obtain it at a fair price by an agreement or compromise, they may do so; and when the petitioners ask that the council shall proceed to pass the necessary legislation to cause proper appropriation proceedings to be had to acquire the property, the fair construction of that is, if the city is not able to obtain it at a fair and reasonable price without condemnation, then the city is authorized to proceed by appropriation proceedings to acquire the property. At all events, we agree that there was no irregularity in this that would invalidate the award. The city was contented with it, the owner of the property was contented; the city is not questioning it, the owner of the property raises no question about it. The city paid the award, the owner of the property accepted the award, and the city took possession of the premises and has since held them. And we do not think, even if this were an irregularity, that it now lies in the mouths of the plaintiffs to complain, unless their complaint is based upon an averment or charge of fraud or prejudice of some sort.

The petition avers that the plaintiffs were not benefited by this improvement. No witnesses were called upon that subject. If it devolved upon the city to show benefit as the pleadings stood (which we very much doubt), we think that situation is changed when this petition is produced, with the petitioners setting forth in their petition that they believe and acknowledge that their respective properties would be especially benefited by the improvement, and that they direct and consent that their respective properties may therefore be assessed for the improvement. Though perhaps not absolutely estopped thereby from saying that they derive no benefit, they should at least furnish evidence sufficient to sustain the burden of proof thereby

cast upon them, to show that they did not derive a benefit from the improvement.

That brings us to the principal question in the case, which is whether the plaintiffs who petitioned for this improvement or whose grantors petitioned for the improvement, are bound to pay the assessment because of their having petitioned.

I pass over without discussion the question whether this expense may be assessed upon abutting property owners under ordinary circumstances, where no question of estoppel arises, because we understand that has been decided in favor of the contention of the petitioners, in the case of to which I have referred, *i. e.*, *C., L. & N. R. R. Co.* v. *Cincinnati, supra,* which we followed in *McGlynn* v. *Toledo,* 22 C. C., 34.  In the McGlynn case it was contended that the petitioners were estopped, because they had petitioned for the improvement, which in that case consisted of the grading and paving of a street.  The expenses assessed upon the property of which the property owners in that case complained were awards of damages on account of change of grade of the street, and we held that they were not estopped, because the evidence did not show us that the property owners were so far aware of the fact that the city was proceeding upon the faith of the former decisions of the Supreme Court with respect to the law as to be estopped from asserting an objection to the assessment.  The decision turned rather upon a question of the construction of their petition, which did not set forth specifically and distinctly that they agreed to be assessed expenses of this particular nature, and we held that therefore they should be deemed to have petitioned for and consented to such assessment only as would be legal and valid; that it should be assumed that what the parties asked for at the hands of the council was, that it should proceed under valid laws, and according to law, to make the improvement and the assessment.  But in the case at bar we find no opportunity for putting a construction upon this petition which would sustain it as consenting to a part of the costs and expenses to be involved in the improvement, and which would not sustain it as to the remainder; for the whole improvement consists in the extension of· the street, and the whole cost and expense incident to it is that arising

from the acquisition of the property necessary for the extension. So that it appears very clearly and distinctly, that the petitioners applying to the council to make this improvement consented and agreed that the cost and expense should be assessed upon their property. Are they, under these circumstances, bound by their agreement or by estoppel? We think they are. We think they are bound, applying the principles laid down by our Supreme Court in *State* v. *Mitchell,* 31 Ohio St., 592, and in *Columbus* v. *Sohl,* 44 Ohio St., 479. I read a paragraph from the case last cited, page 482. The law in that case under which the improvement, consisting of the paving of a street, was made, was held by the Supreme Court to be unconstitutional and void, and yet the assessments made under and in pursuance of that law were sustained and enforced, and they were enforced because, as stated in *State* v. *Mitchell, supra,* the parties by their action in invoking the aid and assistance of the council under the law were estopped, and because, as stated in *Columbus* v. *Sohl, supra,* they were bound by their agreement. The paragraph to which I refer is as follows:

"The law was invalid, and no authority was derived from it, for the making of the improvement, beyond the extent to which it had been adopted by all concerned as a scheme for improving North High street. Its provisions simply furnished the terms of an agreement among the concurring property holders, and the basis of a commission from them to the agencies of the city for the improvement of the street; and the rights and liabilities of all parties, including the city, are to be determined by the law of contract and agency, and not by any statutory powers that may have been intended to be conferred by the Legislature; for the act being invalid could confer none."

Sohl, the defendant in that case, was held because he had petitioned for the improvement.

In *State* v. *M·tchell,. supra,* it was said that parties who had participated in the business leading up to making the improvement would be bound, but just how far they would be required to participate in order to be bound was not very clearly indicated, the court suggesting that that question could be presented if the parties sought to resist the collection of· the assessment. But in the Sohl case it·was held that it was a sufficient partici-

pation to petition for the improvement.  In the Mitchell case it was held that not only the commissioners who acted under that law, but also those who petitioned for the improvement, were bound.

It would be manifestly unfair and unjust to the city for parties to petition for an improvement  and agree to pay the costs thereof, and afterwards, upon some technicality, saddle the expense upon the tax-payers of the city generally.  Circumstances often arise in which a city may be willing to lend its aid by legislation and such machinery as is provided by law to parties to make an improvement, if the parties are willing to pay for it, where the city would not agree to do so unless the parties would agree to pay for it.  The statutes upon the subject of assessments, Chap. 4, Tit. 12, Div. 7, provide that improvements of this kind may be paid for by the city out of the general funds. I read from Section 2263, Revised Statutes:

"When the corporation appropriates, or otherwise acquires, lots or lands for the purpose of laying off, opening, extending, straightening, or widening a street, alley, or other public highway, or is possessed of property which it desires to improve for street purposes, the council may assess the cost and expenses of such appropriation or acquisition, and of the improvement, or of either, or of any part of either, upon the general tax list, in which case the same shall be assessed upon all the taxable real and personal property in the corporation."

But Section 2267, Revised Statutes, provides that the council may decline to do that, and may require a petition setting forth that all cost or some share of the cost shall be assessed upon the property of the petitioners; and where such petition is filed, the council shall proceed accordingly to assess all or such part of the costs as the petitioners consent to, upon the property specially benefited; and under this plan what is said by Judge Burket in *C., L. & N. R. R.* v. *Cincinnati, supra,* reading from pages 484, 485, is quite pertinent:

"Sometimes a municipality desires to open a new street, or straighten or widen an old one, in the line of general improvements, and for the general benefit and appearance of the municipality, and not for the special benefit of the lots and lands in a particular district.  In such cases the compensation, costs and

expenses for lands taken should be paid by the municipality out of its general revenue fund raised for such purposes.

"Sometimes the people in the vicinity desire to have a new street opened, or an old one straightened or widened, as a special benefit to their lots and lands, and when the same would not be sufficient benefit to the municipality to warrant the payment of the compensation, costs and expenses out of the treasury. In such cases, the municipality may refuse to act in the matter until the parties to be specially benefited supply the funds to pay the compensation, costs and expenses, or such portion thereof as the municipality regards fair and just, the same as is now authorized by Section 4651 as to public roads. By acting upon this principle the burden can be placed where it belongs without forcing people to contribute by assessments where they are not benefited, and where they are opposed to the opening, straightening, or widening of the street; and more than all else, their constitutional rights will be protected. If the present statutes are not broad enough, they can be amended."

In our judgment, in such a case as this, where the improvement is petitioned for, and where it is such an improvement as the council may legislate for and have made, and where the only question of legality is that touching the right to assess the costs back upon the property, and the parties expressly agree that it shall be so assessed, this statute is quite sufficient, in connection with the agreement, to make an assessment valid; and whether they are bound by contract or estoppel, or both, is perhaps immaterial. To us it seems that they are estopped by the contract or agreement, even though it may turn out to be an invalid agreement because the city was not authorized to enter into such an agreement. I may add that it seems to us that it is not necessary for the city to invoke the rule laid down in *Lewis* v. *Symmes,* 61 Ohio St., 471.

For the reasons stated we hold that as to the plaintiffs, Dale, Wilkinson, Miller, Hough, Van Hellen, Ott, Yearick and Caldwell, the petition should be dismissed at their costs, and that there should be a decree as prayed for in favor of Kate Hendrickson, Ada S. Long and Michael Murphy. There being a decree in favor of three of the plaintiffs and against eight, the costs will be apportioned accordingly; eight elevenths of the costs will be adjudged against the petitioners as to whom the

petition is dismissed, and three-elevenths will be adjudged against the city.

*Beard & Beard,* for plaintiffs.

*M. R. Brailey* and *C. S. Northup,* for defendants.